IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

HELEN YU-WEN CHANG, *Petitioner/Appellee*,

*v.*

WILLIAM MOLIM SIU, *Respondent/Appellant*.

No. 1 CA-CV 12-0798
FILED 4-22-2014

Appeal from the Superior Court in Maricopa County
No.  FC2009-005645
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Jensen and Gordon, PLLC, Phoenix
By Robert A. Jensen, Tracy Gordon
*Co-Counsel for Petitioner/Appellee*

Law Office of Scott E. Boehm, PC, Phoenix
By Scott E. Boehm
*Co-Counsel for Petitioner/Appellee*

The Cavanagh Law Firm, PA, Phoenix
By Philip C. Gerard, William F. Begley
*Co-Counsel for Respondent/Appellant*

Law Offices of Annette T. Burns, Phoenix
By Annette T. Burns
*Co-Counsel for Respondent/Appellant*

Law Offices of Robert E. Siesco, Jr., Phoenix
By Robert E. Siesco, Jr.
*Co-Counsel for Respondent/Appellant*

---

**OPINION**

Chief Judge Diane M. Johnsen authored the opinion of the Court, in which Presiding Judge Patricia A. Orozco and Judge Lawrence F. Winthrop joined.

---

**J O H N S E N**, Judge:

¶1        After a nine-day hearing, an arbitrator concluded the assets in a series of brokerage accounts were community property, and the superior court adopted that conclusion in a decree of dissolution.  On appeal, Husband argues the parties' arbitration agreement requires this court to review the legal and factual merits of the arbitrator's decision.  Without deciding whether Arizona law permits such review, we affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

¶2        William Molim Siu ("Husband") and Helen Yu-Wen Chang ("Wife") married in June 1998.  Before the marriage, Husband owned various securities.  He eventually closed his sole-and-separate securities accounts and deposited the securities into a new brokerage account containing community funds.  That brokerage account eventually generated ten subaccounts with assets of considerable worth.

¶3        Wife filed a petition for dissolution in 2009.  In the proceedings that followed, Husband and Wife agreed to resolve their

2

property issues by a binding arbitration conducted pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-3001 to -3029 (2014).[1] They presented to the superior court a stipulation, which the court approved, appointing a retired Maricopa County superior court judge to arbitrate the property issues and other matters. In relevant part, the stipulation and order provided as follows:

> 2. The parties stipulate, AND IT IS SO ORDERED, that [the Arbitrator] is authorized to proceed as an Arbitrator, to hold hearings and issue binding Arbitration Award(s) orders on all issues raised in the parties' dissolution action and heard by him . . . . [The Arbitrator] is authorized, pursuant to ARS 12-3001 et seq., to make an Arbitration Award on all issues submitted to him pursuant to Title 25, Arizona Revised Statutes, and said Arbitration Award(s) will include requested findings of fact and conclusions of law concerning the disputed issues.

> *    *    *

> 4. Each party expressly waives his or her right to a trial before a judge in the Maricopa County Superior Court based upon the appointment of the Arbitrator. The parties are aware this stipulation is made pursuant to ARS § 12-3001 et seq.

The stipulated order established the arbitrator's hourly billing rate at $350 and granted him the power "to do all acts and to take all measures necessary or proper for the efficient performance of his duties," including the power to require production of evidence, to resolve discovery disputes and the admissibility of evidence and the power to place witnesses under oath and examine them. The parties agreed, and the court ordered, that the Arizona Rules of Evidence would apply to the arbitration proceedings. Finally, the stipulated order provided:

> **Appellate jurisdiction preserved to Arizona Court of Appeals.** The parties agree, AND IT IS ORDERED, that each is preserving his and her right to appeal a final Arbitration Award to the Arizona Court of Appeals, and

---

[1]     Absent material revision after the relevant date, we cite a statute's current version.

3

that appeals shall not be taken to the Superior Court of Arizona.

**¶4**      After hearing evidence and considering proposed findings and conclusions, the arbitrator issued a 34-page ruling. He found, among other things, that all of the assets in the brokerage accounts were community property and ordered them to be divided equally between the parties.

**¶5**      Citing A.R.S. § 12-3020, Husband filed a "Motion to Change, Modify and Correct Arbitration Award" asking the arbitrator to "amend[] and correct[]" his characterization of the disputed accounts. The arbitrator denied Husband's motion, concluding his challenge to the merits of the award was not proper under A.R.S. §§ 12-3020 or -3024. The superior court then granted Wife's application to confirm the arbitrator's award and entered a judgment and decree of dissolution that incorporated the arbitrator's findings and conclusions.

**¶6**      Husband timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and A.R.S. §§ 12-2101 (A)(1) (2014) and -2101.01(A)(6) (2014).

## DISCUSSION

**¶7**      Husband argues the arbitrator erred in concluding the brokerage accounts were community property and in dividing them equally between the parties. The arbitrator's ruling, he contends, misapplies Arizona law and "inappropriately awarded Wife millions of dollars of Husband's separate property."

**¶8**      As a matter of public policy, Arizona favors arbitration as a means of resolving controversies when parties have agreed to do so. *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 51, 977 P.2d 769, 773 (1999). Litigants who turn to private arbitration usually do so to resolve their disputes speedily and at a minimum of expense. "The primary attraction of arbitration is an expeditious and inexpensive method of dispute resolution." *Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.*, 140 Ariz. 174, 182-83, 680 P.2d 1235, 1243-44 (App. 1984); *see Gates v. Arizona Brewing Co.*, 54 Ariz. 266, 269, 95 P.2d 49, 50 (1939) (arbitration allows "the parties to any controversy or dispute . . . to obtain an inexpensive and speedy final disposition of the matter involved" by agreeing to "submit their controversy" for determination by "judges of their own choice").

**¶9**   It does not appear that the parties here, however, were trying to save money when they decided to hire a private arbitrator to try their case. As noted, the hearing the arbitrator conducted spanned nine days, and at the end of the proceeding, each party filed an attorney's fees request seeking more than $500,000. Instead, Husband and Wife apparently agreed to arbitration because they wanted their complicated property issues resolved by an experienced, albeit retired, jurist who would have the time to consider the evidence and relevant legal principles free of the pressure of a crowded superior court calendar.[2]

**¶10**   Litigants who have the resources to do so certainly are free to fashion a proceeding such as that which occurred here – a full-blown bench trial in every sense of the word, conducted in a law-firm conference room rather than a courtroom. *See Atreus Cmtys. Group of Ariz. v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, ¶ 13, 277 P.3d 208, 211 (App. 2012) ("boundaries of [an] arbitrator['s] powers are defined by the agreement of the parties") (quoting *Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 180, 525 P.2d 309, 311 (1974)). The question first presented by this appeal, however, is whether and to what extent parties may by agreement avoid the procedural and substantive limitations our statutes and common law impose on the review of a private arbitration award.

**¶11**   Under the Arizona Revised Arbitration Act, §§ 12-3001 *et seq.*, upon completion of an arbitration, a party may move the superior court to confirm the arbitrator's award. A.R.S. § 12-3022. Pursuant to A.R.S. § 12-3023, a party aggrieved by the award may move the court to vacate it. Under the statute, the grounds for such a motion are limited: The superior court "shall vacate" an award procured by fraud or on a showing of "evident partiality," corruption or misconduct by the arbitrator, or that the arbitrator exceeded his powers, conducted the arbitration without notice or refused to postpone the hearing despite sufficient cause; or that "[t]here was no agreement to arbitrate." A.R.S. § 12-3023(A).

**¶12**   When Wife asked the superior court to confirm the arbitrator's award, Husband objected but, pursuant to their agreement not

---

[2]  We take judicial notice that a nine-day trial is an extremely rare event in the family court division of Maricopa County Superior Court. According to that court's annual report, the 26 or so judges assigned to the family court, along with associated commissioners, handled 33,882 new cases and 21,820 post-decree filings during 2013.

to "appeal" the award to the superior court, did not move to vacate the award pursuant to § 12-3023(A) or object on any of the grounds in the statute. In fact, he did not ask the superior court to rule on any of the legal and factual issues he raises on appeal. An appellate court normally will not address arguments not raised in the superior court prior to the appeal. *See McDowell Mountain Ranch Land Coalition v. Vizcaino*, 190 Ariz. 1, 5, 945 P.2d 312, 316 (1997). This rule is one of procedure, however, which the court has discretion to overlook. *See Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 482, 724 P.2d 562, 568 (1986). We may review an issue first raised on appeal when, as here, there is no question of notice and the issue is a matter of law. *Id*,

**¶13** Waiver is one thing; jurisdiction is another. Although this court may consider an issue a party arguably waived by failing to raise it in the superior court, parties may not by agreement create appellate jurisdiction where it otherwise would not exist. *Thomas v. Thomas*, 203 Ariz. 34, 36, ¶ 9, 49 P.3d 306, 308 (App. 2002). Husband argues that in the agreement they submitted to the court authorizing the arbitration, he and Wife agreed that any substantive review of the arbitrator's award would be by this court rather than by the superior court. He cites the provision in the stipulation, quoted ¶ 3 *supra*, that each party "is preserving his and her right to appeal a final Arbitration Award to the Arizona Court of Appeals, and that appeals shall not be taken to the Superior Court of Arizona." Our jurisdiction, however, arises not from the parties' agreement but from the superior court's final order and judgment granting Wife's motion to confirm the award, which we have jurisdiction to review pursuant to A.R.S. §§ 12-2101(A)(1) and -2101.01(A)(6). *See Atreus Cmtys. Group*, 229 Ariz. at 506, ¶ 13, 277 P.3d at 211.

**¶14** We turn finally to the scope of our review. Although we review a judgment by the superior court confirming an arbitrator's award pursuant to A.R.S. §§ 12-2101(A)(1) and -2101.01(A)(6), the cases are clear that as long as the award is within the scope of the parties' agreement, "the arbitrators' decision is final both as to questions of fact and law." *Smitty's Super-Valu,* 22 Ariz. App. at 180, 525 P.2d at 311. That is, "even though a court reviewing an arbitration award might consider erroneous some rulings on questions of law, the rulings made by the arbitrators are binding unless they result in extending the arbitration beyond the scope of the submission." *Id.* at 181, 525 P.2d at 311. *See Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, 369, ¶ 11, 965 P.2d 100, 103 (App. 1998) ("An arbitrator's decision generally is final and conclusive; the act provides very limited grounds for the trial court to deny confirmation of an arbitration award . . . ."); *Valler v. Lee*, 190 Ariz. 391, 393 n.4, 949 P.2d 51, 53 n.4 (App. 1997)

("judicial review of consensual arbitration awards . . . is limited to specified, statutory grounds for modifying, correcting, or refusing to confirm an arbitration award").

¶15      Husband argues parties to a private arbitration may, by contract, agree to judicial review broader than otherwise afforded under the law, and contends he and Wife entered such an agreement here. In *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), the Supreme Court held parties to an arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, may not by contract expand the scope of judicial review of the award beyond that provided by the statute. 552 U.S. at 588 (limited review afforded by federal act "substantiat[es] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway"). The Court, however, expressly left open whether parties to arbitrations governed by state law may agree to more expansive judicial review. *Id.* at 590.

¶16      Even before *Hall Street*, the drafters of the 2000 revision to the Uniform Arbitration Act, which Arizona adopted in 2010, debated but ultimately rejected a provision allowing parties to agree on "judicial review of arbitration awards for errors of law or fact." Unif. Arbitration Act § 23 cmt. B (2000). The drafters observed that the absence of such a provision "effectively leaves the issue of the legal propriety of this means for securing review of awards to the developing case law under the [Federal Arbitration Act] and state arbitration statutes." *Id.* cmt. B(5).[3]

¶17      Citing cases from California and Texas, Husband argues we should construe the Arizona Revised Arbitration Act to allow parties to agree to broader, more substantive appellate review than otherwise allowed in the statute and under the cases. *See Cable Connection, Inc. v. DirecTV, Inc.*, 190 P.3d 586, 589 (Cal. 2008) ("California rule is that the parties may obtain judicial review of the merits by express agreement"); *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 102 (Tex. 2011) (agreement that arbitrator lacked authority to issue decision containing "reversible error of state or federal law" rendered merits of award subject to substantive

---

[3]      Section 4(c) of the revised Uniform Arbitration Act, A.R.S. § 12-3004(C), provides that parties "may not waive[] or . . . vary the effect of" section 23 of the uniform act, A.R.S. § 12-3023, which in turn provides that "the court shall vacate" an arbitration award "procured by corruption, fraud or other undue means," and in other specified circumstances. *See* ¶ 11 *supra*.

review on ground that arbitrator exceeded authority). *Accord Raymond James Fin. Servs., Inc. v. Honea,* 55 So. 3d 1161, 1170 (Ala. 2010); *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.,* 640 A.2d 788, 793 (N.J. 1994); *see also HH East Parcel, LLC v. Handy & Harman, Inc.,* 947 A.2d 916, 926 n.16 (Conn. 2008); *but see Brookfield Country Club, Inc. v. St. James–Brookfield, LLC,* 696 S.E.2d 663, 667 (Ga. 2010); *HL 1, LLC v. Riverwalk, LLC,* 15 A.3d 725, 736 (Me. 2011); *John T. Jones Constr. Co. v. City of Grand Forks,* 665 N.W.2d 698, 704 (N.D. 2003); *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.,* 320 S.W.3d 252, 261 (Tenn. 2010); *Barnett v. Hicks,* 829 P.2d 1087, 1095 (Wash. 1992); *see also Dick v. Dick,* 534 N.W.2d 185, 190–91 (Mich. App. 1995).

¶18 Husband argues that because under Arizona law, "[t]he boundaries of the arbitrators' powers are defined by the agreement of the parties," *Smitty's Super-Valu,* 22 Ariz. App. at 180, 525 P.2d at 311, the court should give effect to an agreement to allow substantive judicial review of an arbitrator's award. Wife contends that because the parties agreed to "binding arbitration," the arbitrator's award should be subject only to limited judicial review as provided by statute. See ¶ 14 *supra.* We need not decide whether Arizona law allows parties to contract for expanded appellate review of the merits of an arbitrator's award, however, because Husband and Wife did not make such an agreement here.

¶19 "Arbitration is a creature of contract law." *Schoneberger v. Oelze,* 208 Ariz. 591, 595, ¶ 17, 96 P.3d 1078, 1082 (App. 2004). The interpretation of an arbitration agreement, therefore, is determined according to principles of general contract law. *See Broemmer v. Abortion Servs. of Phoenix, Ltd.,* 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (1992). The purpose of contract interpretation is to determine the parties' intent, which is best ascertained by examining the language of the contract. *Grosvenor Holdings, L.C. v. Figueroa,* 222 Ariz. 588, 593, ¶ 9, 218 P.3d 1045, 1050 (App. 2009).

¶20 Husband argues the parties intended the "right to appeal" provision of the arbitration agreement, quoted in ¶ 3 *supra,* to subject the arbitrator's award to judicial review on the merits. But as we have said, a superior court judgment confirming or vacating an arbitration award customarily is subject to some (albeit very limited) review by this court, *see* A.R.S. §§ 12-2101(A)(1), -2101.01(A). The arbitration agreement's mere reference to "right to appeal" in the court of appeals therefore does not prove Husband's contention that the parties intended to grant this court the power to review the merits of the arbitrator's award.

¶21　　　　　Further, the agreement here mandated "binding" arbitration conducted "pursuant to A.R.S. § 12-3001 *et seq.*"　An agreement for "binding" arbitration does not imply substantive judicial review.　And we cannot disregard the parties' express reference to the Arizona Revised Arbitration Act, which as noted above provides for narrow judicial review.　*See Atreus Comtys. Group*, 229 Ariz. at 506, ¶ 13, 277 P.3d at 211 ("severely limited" review); *Smitty's Super-Valu*, 22 Ariz. App. at 181, 525 P.2d at 312.　Husband argues the parties' intention to allow substantive judicial review is proven by the fact that they arranged for a court reporter to transcribe all of the hearing proceedings, and argues the only purpose of that expense would have been to support an appeal of the merits of the award.　But the agreement also allowed the arbitrator to require the parties to file detailed findings of fact and conclusions of law, the preparation of which would have required trial transcripts.

¶22　　　　　Having rejected Husband's argument that we should review the merits of the arbitrator's award, we will affirm the award as long as the arbitrator did not exceed the bounds of his authority.　*Atreus Comtys. Group*, 229 Ariz. at 506, ¶ 13, 277 P.3d at 211.

¶23　　　　　By their agreement, Husband and Wife authorized the arbitrator to "hold hearings and issue binding Arbitration Award(s) orders on all issues raised in the parties' dissolution action and heard by him."　In their joint pre-arbitration statement, the parties asked the arbitrator to determine whether "the primary [brokerage] account and the related sub-accounts [have] been commingled to an extent that transmutes Husband's sole and separate funds into community property" and, if so, to divide the accounts.　Because the rulings Husband contests were squarely within the arbitrator's authority, the superior court did not abuse its discretion by confirming the award.　*See id.* (court of appeals reviews for abuse of discretion a superior court order confirming arbitration award).

**CONCLUSION**

**¶24** We affirm the superior court's order confirming the arbitration award and its decree of dissolution incorporating the award.[4]



**Ruth A. Willingham · Clerk of the Court**
FILED: MJT

---

[4] We decline Wife's request for her attorney's fees incurred on appeal pursuant to A.R.S. § 25-324(A) (2014). She may recover her costs of appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.