NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MILLS AND WOODS LAW PLLC, *Plaintiff/Appellee,*

*v.*

MARK WEISS, et al., *Defendants/Appellants.*

No. 1 CA-CV 21-0403
FILED 10-04-2022

Appeal from the Superior Court in Maricopa County
No. CV2020-095587
The Honorable Tracey Westerhausen, Judge

**AFFIRMED**

COUNSEL

Stone Canyon Law, PLC, Mesa
By Taylor W. Tondevold, Rylan J. Stewart
*Counsel for Plaintiff/Appellee*

Ahwatukee Law Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Defendants/Appellants*

Wilenchik & Bartness, P.C., Phoenix
By Dennis I. Wilenchik
*Co-Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Samuel A. Thumma joined.

---

**C R U Z**, Judge:

¶1   Mark Weiss, Shari Weiss, and Nesco Investment, LLC (collectively "Nesco") appeal the superior court's orders confirming an arbitration award in favor of Mills and Woods Law PLLC ("Mills and Woods") and denying their motion to vacate the award. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2   In 2017, Nesco retained Mills and Woods to represent them in a civil lawsuit. The parties' written representation agreement ("the Agreement"), contained a detailed provision requiring any disputes between Nesco and Mills and Woods arising out of representation to be submitted to binding arbitration, "including, without limitation, issues as to legal fees and costs and claims for professional malpractice . . . ." Under the Agreement, each side had a right to name a party-designated arbitrator, provided the arbitrators selected were "disinterested individuals knowledgeable in disputes between legal counsel and clients," with "not less than fifteen (15) years' experience in litigating, arbitrating or adjudicating disputes between legal counsel and clients . . . ." If the two party-designated arbitrators could not agree on the resolution of a dispute, they would jointly select a third arbitrator and, collectively, the three arbitrators would resolve the dispute.

¶3   When Nesco failed to pay its invoices for legal services, Mills and Woods served Nesco with a demand for arbitration. Nesco responded to the demand and brought a counterclaim for malpractice. Mills and Woods named William Klain as its party-designated arbitrator and Nesco named two possible party-designated arbitrators, although it ultimately selected Lawrence H. Fleischman.

¶4   In the response, Nesco objected to Klain, asserting Klain was a relative of and had represented Russell Piccoli, an attorney who had sued the Weisses. Mark Weiss, who is also an attorney, later sent an email to the

parties and Klain requesting Klain recuse himself because of his relationship with Piccoli. Klain responded and further disclosed that "Mills & Wood[s] (and its various attorneys) have been opposing counsel on a number of actions in which I have been involved over the past several years. By virtue of such contact, I have gotten to know Mr. Woods and Mr. Mills and have on occasion socialized with them." Klain ultimately determined that he did not have any conflict that would prevent him from serving as arbitrator and further disclosed that he had engaged Fleischman as a mediator in the past. Nesco did not file a motion to disqualify Klain or object to his participation based on his relationship with Mills and Woods until after the two party-designated arbitrators issued their award.

¶5        The arbitrators held an evidentiary hearing and issued an award in October 2020 finding in favor of Mills and Woods on its claim for breach of contract, and against Nesco on its counterclaim alleging malpractice. The arbitrators reduced the amount of fees sought by Mills and Woods by nearly twenty percent, awarding it $220,000 plus post-award interest, but did not award Mills and Woods attorneys' fees and costs in connection with the arbitration proceedings.

¶6        Later that month, Mills and Woods filed an application for confirmation of the arbitration award.[1] In December 2020, Nesco moved to vacate the award, or alternatively to stay it. Nesco argued that (1) arbitrator Klain was not neutral and had failed to disclose in sufficient detail his relationship with Mills and Woods, (2) the arbitrators failed to postpone the arbitration hearing after Nesco provided sufficient cause for postponement of the hearing, and (3) the arbitrators exceeded their power under the Agreement. Mills and Woods countered that Klain's relationship with Mills and Woods was insubstantial, had been disclosed, and Nesco's only objection to Klain serving as an arbitrator had been his relationship with Piccoli. In reply, Nesco disputed that Klain's relationship with Mills and Woods was insubstantial, noting that Klain's Facebook page showed that Klain and Sean Woods were Facebook friends, that Klain had thanked Woods on Facebook for tickets to a Rolling Stones concert in August 2019, and that Woods had "liked" or otherwise reacted to a number of Klain's

---

[1]        Mills and Woods sought confirmation under Arizona's Uniform Arbitration Act, *see* A.R.S. § 12-1501 et seq., when (given the dates involved) the applicable statute is Arizona's Revised Uniform Arbitration Act, *see* A.R.S. § 12-3003. The parties, however, have not asserted that the substantive provisions of the revised act, which govern this dispute, differ in any meaningful way.

Facebook posts, including a post dated August 4, 2020, about the death of Klain's cat.

¶7     After evidentiary hearings in February and April 2021,[2] the superior court confirmed the award and denied the motion to vacate. The court found that Klain was a "disinterested" arbitrator within the meaning of the Agreement, and that if Nesco had believed Klain's disclosure about Mills and Woods was insufficient and "vague and ambiguous, then the time to explore and object to that defect was [during the arbitration proceeding], not now." After entry of a final judgment, we have jurisdiction over Nesco's appeal pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-2101(A)(1), -2101.01(A)(6).

## DISCUSSION

I.     Arbitrator's Disclosure

¶8     Nesco first argues Klain failed to fully disclose his personal connections with Mills and Woods, that he was not a "disinterested individual" under the Agreement and the facts evidence partiality that warrants vacating the arbitration award. We review the superior court's order confirming an arbitration award or denying a motion to vacate an award for an abuse of discretion. *Chang v. Siu*, 234 Ariz. 442, 448, ¶ 23 (App. 2014); *Fisher v. USAA Cas. Ins. Co.*, 245 Ariz. 270, 272, 274, ¶¶ 9, 18 (App. 2018).

¶9     "[T]he goal of arbitration is to make a final disposition of controversies in a speedier, less expensive manner than is available under normal litigation proceedings." *Pima County v. Maya Constr. Co.*, 158 Ariz. 151, 154 (1988). The law favors arbitration in disputes that the parties have agreed to arbitrate. *Allstate Prop. & Cas. Ins. Co. v. Watts Water Techs., Inc.*, 244 Ariz. 253, 257, ¶ 10 (App. 2018). The party challenging an arbitration award has the burden of proving the existence of grounds to vacate the award. *Wages v. Smith Barney Harris Upham & Co.*, 188 Ariz. 525, 530 (App. 1997). As Nesco acknowledges, "[t]he superior court may reject an arbitration award only on narrow statutorily enumerated grounds." *Nolan v. Kenner*, 226 Ariz. 459, 461, ¶ 5 (App. 2011).

---

[2]     At the April 2021 hearing, Klain testified that he had over 500 Facebook friends and had socialized with Woods approximately six times in the six years he had known Woods. He did not consider Woods a close friend.

¶10        Under Arizona's Revised Uniform Arbitration Act (the Act), A.R.S. §§ 12-3001 to -3029, "[a]n individual who has a known, direct and material interest in the outcome of the arbitration proceeding or a known, existing and substantial relationship with a party may not serve as an arbitrator required by an agreement to be neutral."  A.R.S. § 12-3011(B).  The Act imposes disclosure requirements on arbitrators and prospective arbitrators:

> A.   Before accepting appointment, an individual who is requested to serve as an arbitrator, after making a reasonable inquiry, shall disclose to all parties to the agreement to arbitrate, to the arbitration proceeding and to any other arbitrators any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding, including both:
>
> 1.   A financial or personal interest in the outcome of the arbitration proceeding.
>
> 2.   An existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, a witness or another arbitrator.

A.R.S. § 12-3012(A).  "If an arbitrator discloses a fact required by subsection A or B of [A.R.S. § 12-3012] **and a party timely objects to the appointment or continued service of the arbitrator** based on the fact disclosed, the objection may be a ground under § 12-3023, subsection A, paragraph 2 for vacating an award made by the arbitrator."  A.R.S. § 12-3012(C) (emphasis added).   The Act provides that the superior court "shall" vacate an arbitration award in certain limited circumstances, including (1) when there was "[e]vident partiality by an arbitrator appointed as a neutral arbitrator," (2) when "[a]n arbitrator refused to postpone the hearing on showing of sufficient cause for postponement," and (3) when an arbitrator exceeds the powers of the arbitrator.  A.R.S. § 12-3023(A)(2)(a), (3), (4).   When an agreement requires an arbitrator "to be neutral," "[a]n arbitrator appointed as a neutral arbitrator **who does not disclose** a known, direct and material interest in the outcome of the arbitration proceeding or a known, existing and substantial relationship with a party is presumed to act with evident partiality under § 12-3023, subsection A, paragraph 2."  A.R.S. § 12-3012(E) (emphasis added).

¶11        "[I]n determining whether 'evident partiality' exists, courts take a case-by-case approach."  *Wages*, 188 Ariz. at 531.  Whether evident

partiality exists is "highly dependent on the unique factual settings of each particular case." *Id.* (citation omitted). "Evident partiality" is distinct from actual bias. *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 147 (1968) (under the Federal Arbitration Act ("FAA"), party seeking to vacate an arbitration award for evident partiality need not show that the arbitrator "was actually guilty of fraud or bias in deciding th[e] case."). "[E]vident partiality is present when undisclosed facts show a reasonable impression of partiality." *Schmitz v. Zilveti*, 20 F.3d 1043, 1046 (9th Cir. 1994) (construing FAA) (citations and internal quotation marks omitted).

¶12 Parties must, when possible, raise their complaints about the arbitration during the arbitration process itself. "[P]arties who know or have reason to know of possible partiality must raise an objection with the arbitrator during the course of the arbitration proceeding . . . [i]t would defeat th[e] primary purpose [of arbitration] to allow parties to withhold such objections until after an unfavorable award." *Fisher*, 245 Ariz. at 273, ¶ 14. "Ensuring prompt, efficient, and inexpensive dispute resolution . . . requires parties to raise objections to be handled by the arbitrator during the proceedings to avoid unnecessary and protracted litigation." *Id.* (citation and internal quotation marks omitted).

¶13 Citing A.R.S. § 12-3012(E), Nesco argues the superior court should have vacated the award because this is a "nondisclosure" case requiring a presumption of evident partiality. Klain, however, disclosed that he had known both Mills and Woods for several years, had served as opposing counsel on cases with them, and had occasionally socialized with them. The disclosure provided the general nature and scope of the relationship and complied with A.R.S. § 12-3012(A). None of the evidence cited by Nesco, including the Facebook relationship with Woods, the night out in 2019 including dinner, drinks and a concert, and several other in-person social contacts occurring "long before" the arbitration, is inconsistent with that disclosure. After Klain's disclosure, Nesco did not timely object to Klain's appointment based on his social relationship with Mills and Woods or ask Klain for additional details about the relationship.[3] Instead, Nesco fully participated in the arbitration proceedings and did not raise any issue about the disclosed relationship with Mills and Woods until after the arbitrators issued their award. Because it was on notice, Nesco should have raised its objection to Klain based on his relationship with Mills and Woods or sought further details during the arbitration

---

[3] Nesco's claim that Klain "deliberately refused" to disclose any substantive details about his relationship is not supported by the record. Nor is its claim that Klain and Woods had a "deep friendship."

proceeding. *See Fisher*, 245 Ariz. at 273, ¶ 14. We find no abuse of discretion in the superior court's decision not to vacate the arbitration award.

II.     Failure to Postpone

**¶14**         Nesco next argues the superior court erred in its decision not to vacate the award because the arbitrators refused to postpone the arbitration hearing. *See* A.R.S. § 12-3023(A)(3) ("On motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if . . . [a]n arbitrator refused to postpone the hearing on showing of sufficient cause for postponement . . . so as to prejudice substantially the rights of a party to the arbitration proceeding.").

**¶15**         Without citation to the record, Nesco argues that it asked the arbitrators to postpone or stay the arbitration hearing because the case underlying its malpractice claim against Mills and Woods, *World Egg Bank, Inc. v. Nesco Investments, LLC*, 251 Ariz. 377 (App. 2021), was still pending on appeal. In its motion to vacate the arbitration award, Nesco argued that it had provided the arbitrators with sufficient cause for postponement in its June 3, 2020 response to the demand for arbitration based on the following statement:

> At this juncture, I must point out that Nesco is appealing Judge Whitten's decision on valuation. Since Mills & Woods elected to initiate the arbitration before knowing the results of the appeal [in *World Egg Bank, Inc.*], we are now forced to bring our malpractice claim. We cannot wait for the results of the appeal to fully evaluate their malpractice. Due to Mills & Woods decision to initiate arbitration before conclusion of the appeal, they have waived any benefit that might have accrued pending the results of the appeal.

The superior court found that nothing in the record showed that Nesco moved to postpone or stay the arbitration hearing before the arbitration award, and instead found the June 3, 2020 answer showed that Nesco had pursued its malpractice claim in the arbitration proceedings. The court found that Nesco waived its postponement argument. We agree that Nesco waived its postponement argument by affirmatively bringing its malpractice claim in the arbitration proceeding and not seeking a continuance. The record further supports this conclusion. In its September 21, 2020 response brief, Nesco wrote the following:

> As discussed in the emails and conference call prior to the Opening Briefs, this arbitration is independent of the appeal.

7

It was Mills & Woods decision to force binding arbitration prior to the final appellate court ruling. Nesco should not be made to suffer in that it was Mills & Woods who forced the timing of this dispute. Therefore, Nesco requests that the total payment to Nesco from Mills & Woods, as a result of this binding arbitration, be immediately due and payable.

We find no abuse of discretion.

III.    Exceeding Powers

¶16        Nesco next argues the superior court erred by failing to vacate the arbitration award under A.R.S. § 12-3023(A)(4) because the arbitrators exceeded their powers under the Agreement. *See* A.R.S. § 12-3023(A)(4) (on motion to the court, the court shall vacate an arbitration award if "[a]n arbitrator exceeded the arbitrator's powers."). It contends the arbitrators exceeded their powers by (1) failing to appoint a third arbitrator after arbitrator Fleischman "determined that he could not reach a decision on the matters in dispute"; (2) holding an evidentiary hearing more than twenty days after the arbitrators received the demand for arbitration and answer; and (3) failing to allow post-hearing briefing. It cites no legal authority other than section 12-3023(A)(4) for its argument.

¶17        We agree with the superior court's assessment that the email cited by Nesco did not "reveal[] an impasse between [Fleischman] and Arbitrator Klain, or one that only a third arbitrator could resolve." In that email, Fleischman informed the parties about a conference call for the parties "to discuss how best to proceed," given that the parties wanted to resolve their disputes "as quickly and inexpensively as possible." Fleischman then stated, "Perhaps some more briefing and oral argument can result in a unanimous decision. The process described in 4.1(b) seems only to apply if a third arbitrator is necessary. We need to discuss if it makes sense for another arbitrator to be selected now to avoid having to do things twice, but those issues can be dealt with in the conference call." As the superior court noted, Nesco failed to cite to any objection it made about proceeding with two arbitrators instead of three or about the procedures the arbitrators followed. Nor does it do so on appeal. Similarly, Nesco cannot square its argument (addressed in the previous section) that the hearing should have been continued with its argument here that the hearing was not held promptly enough. Nor has Nesco shown that any refusal to allow post-hearing briefing precluded the superior court's rulings. Nesco has shown no abuse of discretion in the superior court's

decision declining to vacate the award based on the arbitrators exceeding their powers.

## IV. Null and Void

**¶18** Finally, Nesco argues the arbitrator's decision, which found that Mills and Woods' representation of Nesco did not fall below the standard of care, is null and void because it was incompatible with this court's opinion in *World Egg Bank, Inc.* According to Nesco, "the outcome of [*World Egg Bank, Inc.*] was an implicit recognition that [Mills and Woods] had committed malpractice by, as the arbitrators themselves had concluded, believing that April 17, 2015 was the fair-value valuation date and litigating the underlying case based on that fallacious and incompetent belief." Nesco cites no legal authority other than *World Egg Bank, Inc.* for its argument. Even if Nesco has not waived this argument on review, nothing in *World Egg Bank, Inc.* compels a conclusion that Mills and Woods committed legal malpractice. Any alleged malpractice on the part of Mills and Woods was not an issue raised by any party to the *World Egg Bank, Inc.* appeal, and Nesco prevailed in that appeal. Nesco has not shown that the arbitration award is null and void.

## V. Attorneys' Fees

**¶19** Mills and Woods seeks an award of attorneys' fees pursuant to A.R.S. § 12-341.01(A) and costs pursuant to A.R.S. §§ 12-331, -341, -342. As the successful party, Mills and Woods is entitled to costs pursuant to A.R.S. § 12-341 and in our discretion, we award it reasonable attorneys' fees upon compliance with ARCAP 21.

## CONCLUSION

**¶20** For the foregoing reasons, we affirm.

